## North Chicago Rolling Mills Co.
### v.
## Charles Benson, Adm'r, etc.

INFANT EMPLOYE.—Where an infant of sixteen years was employed as a common laborer at a rolling mill, and the next year, at his own solicitation, was promoted to be a switchman's helper, and while coupling cars in that capacity was killed.  *Held*. that the contract to work as switchman's helper, whether express or implied, was not void but only voidable; that while engaged in coupling the cars in question he was a fellow servant with defendants' other servants who had the care and management of the train, notwithstanding his infancy. The judgment for the plaintiff is reversed, as contrary to the evidence and for erroneous instructions.

APPEAL from the Superior Court of Cook county ; the Hon. ELLIOTT ANTHONY, Judge, presiding.   Opinion filed January 6, 1886.

This action was brought by appellee as administrator of John A. Benson, deceased, against the appellant corporation, to recover damages for causing the death of the intestate, as it is claimed by the negligence of appellants, its agents and servants. The declaration is in substance, that the defendant, August 29, 1883, was the owner and operator of a certain rolling mill, known, etc., situate at South Chicago, and possessed of and using, etc., a certain railroad connected with and extending over a portion of said rolling mill grounds, together with tracks, cars, locomotives, etc., and was then and there possessed

of a certain locomotive engine with a certain freight train of cars thereto attached, and under the care and management of divers then servants of defendant, who were then and there driving the same on said railroad for the purpose of separating, weighing and coupling said cars, and the defendant being such owner, etc., theretofore, to wit, July 13, 1882, at its request, the said John A. Benson, being a minor, had become and was employed by the defendant in the capacity of a common laborer about said mills, especially for the purpose of dumping stone, sweeping off the sidewalks up in the stock house, at daily wages, and for no other purpose whatsoever; and while said John A. Benson, with all due care and diligence was then and there dumping stone and sweeping off the sidewalk, the foreman, traffic manager and superintendent, then servants of the defendant, and then and there attending to the business affairs of said defendant and of said railroad, August 29, 1883, ordered the said John A. Benson to attend to coupling and connecting the said freight cars, then and there being separated, weighed and coupled as aforesaid upon the said tracks, contrary to the special engagement of the said John A. Benson, deceased, and to do which he was unversed and inexperienced, and which fact was well known to the defendant, and while so engaged in said coupling of said cars, having to go between them for the purpose, the defendant then and there by its servants so carelessly and negligently drove and managed the said locomotive and train, that by and through the careless and negligent conduct of the defendant, by its servants in that behalf, the said locomotive engine and freight train was then and there driven with great force and violence against the cars then being coupled; that deceased while using due care, etc., being unable to make a coupling in the first instance, in making a second effort got his foot caught between the guard rail and main track and was run over and killed.

Plea, general issue. Tried by jury, and verdict and judgment for plaintiff; damages at $1,200. Appeal by defendant.

It appeared upon the trial without contradiction, that the deceased, John A. Benson, then being a little above sixteen years of age, was employed in July, 1882, as a common laborer,

in dumping stone, sweeping sidewalks, etc., and that he was, in general capacity, above the average of lads or young men of his years, and that the next year he was ambitious and desirous of obtaining a better position; that his wages as such common laborer were $1.50 per day; that the wages paid for a switchman's helper were $2.50 per day; that in July, 1883, at the special request of Benson and his friends who felt interested in him, he was employed by the yardmaster in the capacity of switchman's helper, and was paid at the rate of $2.50; that in the absence of the switchman, it was his duty to couple cars that were being separated for the purpose of weighing in the yard; that deceased had worked as switchman twelve days in June, eight days in July, and fourteen days in August, 1883, and down to the 29th of the latter month, when he was killed, and that his wages in August were paid to his father. The evidence is clear and undisputed, that his employment had been changed from that of a common laborer to that of switchman at his own solicitation, and was entirely voluntary on his part. And there was no evidence tending to show any specific negligence on the part of those having the management of the freight train at the time of the unfortunate and deplorable accident occasioning John A. Benson's death. The court at the instance of plaintiff, gave to the jury the following instructions:

"2. If the jury believe, from the evidence, that the defendants delegated to their yardmaster the care and management of their entire business, as a distinct department thereof, at their South Chicago Rolling Mills, and that the deceased went into the employment of the defendant as a common laborer, and was placed by them in a position of subordination, and subject to their orders and control, and was injured while performing hazardous duties which he had not undertaken to do, by order of the yardmaster, such as switching and coupling cars, which he did not contract to do, and the evidence so shows, and by means of which he was killed, and not in consequence of his own negligence, then they are instructed, as a matter of law, that the defendants are liable to the plaintiff for the pecuniary loss they may find he has sustained by the death of his son."

North Chicago Rolling Mills Co. v. Benson.

"3.    If the jury believe, from the evidence, that the deceased at the time he was employed by the defendants, was a lad of sixteen years of age, and was employed to do common work about the rolling mill grounds, and was sometimes ordered to supply the place of an absent switchman, and to switch and couple cars, and that he was inexperienced in handling switches and couplings, and was unfitted for that work by reason of his unskillfulness, inexperience and youth, and that this was known to the defendants ; that he was employed by the defendants at the time of his death, and for about a year previous thereto in the capacity of a common laborer only, and that he continued so up to the time of his death, and was ordered by the yardmaster, acting for and as the agent of the defendants, and within the scope of his authority, to switch and couple cars, which was out of the line of his duty as such common laborer, and the evidence so shows, and that while attempting to obey such order on the 29th day of August, 1883, he caught his foot between the guard and main rail of the track and was run over and killed, and without fault or negligence on his part, and by the negligence of the yardmaster, the case of the plaintiff is established and he is entitled to recover.    But in determining this matter, the court instructs you to take into consideration all of the evidence in the case."

Messrs. WILLARD & DRIGGS, for appellant; cited Gartland v. T., W. & W. Ry. Co., 67 Ill. 498.

Mr. GIDEON L. BARBER, for appellee.

McALLISTER, J.    The fact was established by undisputed testimony, that the deceased at the time of his injury, and for some time prior thereto, had been employed by the defendant at his own solicitation, in the capacity of a switchman, in the defendant's yard, whose duties, under that engagement, he was performing at the time of the accident.    That fact was utterly subversive of the only cause of action set out in the declaration, and plaintiff's second and third instructions to the jury should not have been given.    The deceased was sev-

enteen years of age in the May next before his death. His contract with the defendant to work for defendant in the capacity of a switchman, whether express or implied, was not void, but only voidable. While engaged in coupling the freight cars he was clearly a fellow servant with the other servants of defendant, who had the care and management of that train, notwithstanding his infancy; Gartland v. Toledo, etc., Ry. Co., 67 Ill. 498; King v. The Boston, etc., R. R., 9 Cush. 112.

There is no averment in the declaration that the duties of switchman at that place were specially hazardous, or that the act of coupling cars, under the circumstances, was necessarily and ordinarily dangerous, or that the yardmaster or superintendent failed to notify deceased and inform him of the dangers to which he would be subject, and that deceased from his youth and inexperience was unacquainted with them. Coombs v. N. Bedford Cordage Co., 102 Mass. 575–595.

We are of opinion that the verdict was unsupported by the evidence; that said instructions to the jury were erroneous and that the judgment should be reversed and the cause remanded.

Judgment reversed.